NOT FOR PUBLICATION

|  |  |
|---|---|
| PATRICK BYRNE, ET AL., : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> LOUIS CALASTRO, ET AL., : <br> : <br> Defendants. : <br> : | **UNITED STATES DISTRICT COURT** <br> **DISTRICT OF NEW JERSEY** <br><br> **Hon. Dennis M. Cavanaugh** <br><br> **OPINION** <br><br> Civil Action No. 05-cv-68 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court by Third-Party Defendants Ulico Casualty Company ("Ulico") and State National Insurance Company's ("State National", collectively "UIG"[1]) motion for Judgment on the Pleadings to dismiss the Third Party Complaint against them pursuant to FED. R. CIV. P. 12(c), and Third-Party Plaintiffs Joseph Gambardella, Louis Calastro, Michael Rosado, Salvatore Salerno and Peter Rizzo's ("Third-Party Plaintiffs") cross motion to compel Third-Party Defendants UIG to advance defense costs. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties and based upon the following, it is the finding of this Court that Third-Party Defendants UIG's FED. R. CIV. P. 12(c) motion for Judgment on the Pleadings **granted** and Third-Party Plaintiffs' cross motion compelling UIG to advance defense costs is **denied**.

---

[1] Ulico Insurance Group (UIG) is the managing general agent for State National Insurance Company ("State National").

I.     BACKGROUND[2]

On August 26, 2002, Laborers' International Union of North America ("LIUNA") AFL-CIO Local 734 Pension Fund and LIUNA Local No. 734 Welfare and Educational Fund ("the Funds") purchased insurance from UIG to cover liability or losses occurring by the act or omission of the Defendants/Third Party Plaintiffs. The Policy was effective from August 26, 2002 through August 26, 2003 and renewed annually and The Funds paid a total premium of $101,000.00.

On January 6, 2005, a Verified Complaint was filed in the above captioned matter[3] ("Byrne") by certain trustees of The Funds against present and former trustees, officers and employees of the Funds, including the Third-Party Plaintiffs, alleging breaches of fiduciary duties, conversion of assets, fraud, breach of employment agreements and violations of good faith and fair dealing. On March 31, 2005, Third-Party Plaintiffs filed the subject Third-Party Complaint against UIG, among others, seeking a declaration that their Trustee and Fiduciary Liability Insurance Policy[4] ("The Policy") provided Third-Party Plaintiffs with coverage regarding the above captioned lawsuit. Notice of Byrne was given to UIG pursuant to The Policy's terms and UIG denied coverage to the Third-Party Plaintiffs relying on Endorsement No. 4 which provides in relevant part:

> It is agreed that Section IV, Exclusion, Part A of the above-numbered policy is amended by adding the following new exclusion:
>
>> The propriety or impropriety of any compensation paid out of any trust or plan for administrative expenses for services that were or should have been rendered to any trust or plan.

---

[2]The facts set forth in this Opinion are taken from the undisputed facts in the parties' moving papers.

[3]Byrne, et al. v. Calastro, et al.

[4] Trustee and Fiduciary Liability Insurance Policy, Policy Number TFL-3807282.

The Byrne matter involves an alleged scheme to defraud the Funds of money and services by employing non-essential persons at excessively high salaries which caused the Pension Fund to pay approximately 40% of its contributions toward administrative costs, while the Welfare Fund paid approximately 20% of its contributions in the same capacity. On October 28, 2002, LIUNA entered into a voluntary supervision agreement whereby it consented to the appointment of a Supervisor to take any action he deemed necessary to preserve or manage Local branch of LIUNA ("Local 734"). This supervision lasted two years, wherein daily control was turned over to Supervisor Raymond Pocino and Deputy Supervisor Patrick Byrne. An emergency trusteeship was imposed on Local 734 on December 30, 2004 at the recommendation of LIUNA Independant Hearing Officer, Peter Vaira, Esq. As mentioned above, the subject verified complaint was filed in January, 2005, which relied on the findings of Mr. Vaira.

In his final order memorandum, Vaira found that Third-Party Plaintiffs Peter Rizzo and August Vertalito were alleged associates of organized crime, and they, along with other Third-Party Plaintiffs and or Defendants, devised a scheme to defraud The Funds, including conversion of assets, fraudulent conduct, obstruction of an audit, and that the fraud on The Funds was continuous and notorious so that the union trustees either had actual knowledge of the fraud, or should have reasonably known about the fraud, which makes the trustees liable to The Funds for breach of their fiduciary duties.

According to the Verified Complaint, Third-Party Plaintiffs were responsible for the administration of The Funds, including investment of The Funds' assets, personnel management and the payment of The Funds' administrative expenses.

Third-Party Defendants seek judgment on the pleadings in this matter as they argue that there

is no possible set of facts whereby Third-Party Plaintiffs would be entitled to relief against UIG based on Endorsement No. 4 of The Policy. This Court finds that both Section IV, A.2 of The Policy and Endorsement No. 4 are unambiguous, and preclude all possible relief for Third-Party Plaintiffs against their insurance companies. As such, Third-Party Defendants' motion for judgment on the pleadings is **granted**. Third-Party Plaintiffs cross move for Third-Party Defendants to advance Defense Costs for these potentially covered claims. Since this Court finds that there are no viable claims which are potentially covered by UIG, Third-Party Plaintiffs' motion for defense costs in the underlying Byrne matter is **denied**.

## II.    STANDARD OF REVIEW:

### MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)

In reviewing a motion to dismiss on the pleadings made pursuant to FED. R. CIV. P. 12(c), a Court must take all allegations in the Complaint as true, viewed in the light most favorable to the plaintiff. See Gomez v. Toledo, 446 U.S. 635, 636 n.3 (1980); Robb v. Philadelphia, 733 F.2d 274, 277 (3d Cir. 1984). A Rule 12(c) Motion for Judgment on the Pleadings must be decided using the same guidelines to decide a Rule 12(b)(6) motion to dismiss for failure to state a claim. In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993). If no relief could be granted under any set of facts that could prove consistent with the allegations in the Complaint, the Court may dismiss the Complaint for failure to state a claim. See Hishon v. Spalding, 467 U.S. 69, 73 (1984);

Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986).

### III.   DISCUSSION

#### A.   Third-Party Defendants' Motion for Judgment on the Pleadings

After carefully reviewing the record and papers submitted by both parties, this Court finds that Third-Party Defendants' motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12 (c) is granted because Third-Party Plaintiffs can prove no set of facts which may entitle them to relief. As Third-Party Defendants illustrate, in appraising the sufficiency of a complaint, the critical inquiry is whether, taking all of the allegations of the complaint as true and viewing them liberally, giving the plaintiffs the benefit of all inferences which may be fairly drawn therefrom, can plaintiffs prove a set of facts which would entitle them to relief. (See Defs.' Brief, p. 4). This Court finds that after reviewing all submissions of the parties and carefully evaluating the insurance policy, the policy language clearly precludes coverage for the claims made against UIG.

The Policy provides in pertinent part:

> State National shall not be liable for loss on account of any claim made against an insured based upon, arising from, or in consequence of:
>
> > Any deliberately dishonest, fraudulent or criminal acts or any willful violation of any statute or regulation by the insured: provided, however, that this exclusion shall not apply to such claim, or to State National's obligation to pay, reimburse or advance claims expenses regarding such claim, until an admission of liability, judgment or other final adjudication adverse to the insured shall establish such acts or violations.[5]

The above shows, unambiguously, that all of the claims asserted against Third-Party Plaintiffs for which they seek coverage from Third-Party Defendants are excluded from coverage,

---

[5] The Policy, § IV. Exclusions, A.2., attached to the Declaration of Philip J. Mause.

based on the plain meaning of The Policy. Specifically, there has not been an admission or adjudication of liability. (See Defs' Reply Brief, p. 7). Thus, no coverage is available for the deliberately dishonest, fraudulent, etc. conduct alleged against Third-Party Plaintiffs. As mentioned above, The Policy also includes an Endorsement which provides:

> It is agreed that Section IV, Exclusion, Part A of the above-numbered policy is amended by adding the following new exclusion:
>
>> State National shall not be liable for loss on account of any claim made against an insured based upon, arising from, or in consequence of...
>> The propriety or impropriety of any compensation paid out of any trust or plan for administrative expenses for services that were or should have been rendered to any trust or plan.
>
> Nothing contained herein shall vary, alter or extend the terms, conditions and limitations of the policy except as stated above.[6]

The claims in Byrne all surround the alleged wrongful actions or inactions of Third-Party Plaintiffs in the management of The Funds' administrative expenses.

> Importantly, The Policy also defines the term Endorsement as:
>
>> a document signed by an authorized representative of State National that modifies the coverage provisions set forth in the policy. If the terms of any endorsement are inconsistent with the terms of this policy, the terms of the **endorsement** supersede the policy. The language of The Policy is clear and unambiguous. The endorsement trumps any conflicting terms with it in The Policy.[7]

Clearly, Endorsement No. 4 preempts any conflicting policy language and holds that there is no coverage for when a fiduciary duty is breached by usurping money from The Funds and used for administrative expenses when that money should have been forwarded to The Funds. At the

---

[6]The Policy, Administrative Expense Exclusion Endorsement, with effective date August 26, 2004.

[7]The Policy, § IX. Definitions, G.

heart of Byrne, are allegations of a variety of ways that Third-Party Plaintiffs commandeered money from The Funds, allegedly in a fraudulent manner, committed conspiracy and were involved in organized crime. (See Pls.' Opp. pp. 6-11). As Third-Party Defendants correctly assert, Third-Party Plaintiffs' allegations of such conduct do not alter the fact that the Byrne Complaint arises from inappropriate handling of administrative expenses. (See Defs' Reply Brief, p. 6). As such, the Endorsement enumerated above applies to the Byrne action and no coverage relating to the Byrne action is available to Third-Party Plaintiffs under The Policy.

New Jersey law mandates that insurance policies be interpreted according to their plain language. See Stewart Title Guaranty Co. v. Greenlands Realty, L.L.C. 58 F. Supp.2d 370 (D.N.J. 1999). The reasonable expectations of an insured are relevant only when the language of the insurance is "ambiguous" or requires "strenuous study." Weedo v. Stone-E-Brick, Inc., 81 N.J. 233 (1979). When the policy is clear, there is no need to examine the reasonable expectations of the insured. See Zacarias v. Allstate Ins. Co., 168 N.J. 590, 601 (2001). This Court finds that the Policy terms are unambiguous, and contrary to Third-Party Plaintiffs' assertion that their reasonable expectations need to be considered, this Court finds that the plain language of the Policy controls, thereby precluding coverage.

In reference to Third-Party Plaintiffs' assertion that they did not have notice of The Policy, and are therefore not bound by its terms, such assertion is without merit. Third-Party Plaintiffs claim that since they were not provided a copy of The Policy and all exclusions, that they reasonably expected coverage under The Policy for claims arising out of the management of The Funds. (See Pls.' Opp. pp. 30-31). Also, Third-Party Plaintiffs claim that since they were not given a copy of The Policy, they were unaware of the notice provision and the Administrative Expense Exclusion

7

contained therein. (See Pls.' Opp. P. 29). Importantly, Third-Party Plaintiffs do not assert that the provisions are inapplicable. The insurance representative, Palisades Insurance Agency[8] procured The Policy on behalf of Third-Party Plaintiffs, and accepted The Policy, which included the notice requirement and Endorsement No. 4. According to The Policy's terms, only the "insurance representative" needs to receive notice regarding The Policy. Palisades Insurance Agency was designated to act on behalf of the insureds to give and receive notice.[9] There are no allegations in the Complaint that the insurance representative was not given the entire Policy, which included Endorsement No. 4. In interpreting insurance policies and contracts, courts are to give policy language its plain and ordinary meaning. See Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001). Where the express language of the policy is clear and unambiguous, the court is bound to enforce the policy as written. See Royal Ins. Co. v. Rutgers Cas. Ins. Co., 271 N.J. Super. 409, 416 (App. Div. 1994). This Court finds that The Policy language is clear and unambiguous, and thus finds that the notice requirements contained therein were satisfied by notifying Palisades Insurance Agency.

### B. Third-Party Plaintiffs' Cross-Motion for Defense Costs

Third-Party Plaintiffs move for Third-Party Defendants to advance defense costs in the underlying Byrne action. In the interests of judicial economy, even though Third-Party Plaintiffs did not make a formal cross motion and Third-Party Defendants see it as a wholly independent matter, the Court decides the motion herein.

According to Third-Party Plaintiffs' reply in opposition to Third-Party Defendants' motion to dismiss, the Complaint sets forth a covered claim and that the duty to defend arises when an

---

[8]The Policy, § IX.K., Declarations, Item 1.

[9]The Policy, §VII.C.

allegation in the Complaint corresponds to a risk that the Policy insures against. See Voorhees v. Preferred Mutual Insurance Co., 128 N.J.165, 173 (1992).[10] As stated above, the Policy language does not allow coverage for the claims asserted in Byrne against the Defendants/Third-Party Plaintiffs. As a result, no duty to defend arises because there has been no claim asserted which is potentially covered by the Policy. Third-Party Plaintiffs' motion for advancement of defense costs is **denied**.

IV.   CONCLUSION

For the reasons stated, it is the finding of this Court that Third-Party Defendants' motion for Judgment on the Pleadings pursuant to FED. R. CIV. P. 12(b)(c) is **granted.** Third-Party Plaintiffs' motion for defense costs is therefore **denied**, as this Court finds that there is no claim set forth which is potentially covered under The Policy. An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:      November  16 , 2007
Orig.:     Clerk
cc:        All Counsel of Record
           Hon. Mark Falk, U.S.M.J.
           File

---

[10]Third-Party Plaintiffs' Reply Brief, p.1.

9